UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREAT NORTHERN INSURANCE COMPANY a/s/o DAN and DANIELLE PERPER, <br><br> Plaintiff, <br><br> vs. <br><br> AMAZON.COM, INC., SHENZHEN DOUBLE KING TECHNOLOGY CO., LTD., and PARADISE 00, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) 19 C 684 <br><br> Judge Gary Feinerman |

### MEMORANDUM OPINION AND ORDER

Great Northern Insurance Company alleges in this suit under Illinois law that Amazon.com, Inc. and two Chinese companies—Shenzhen Double King Technology Co., Ltd. and Paradise 00—are responsible for defective hoverboards that caused substantial fire damage to the home of its insureds/subrogors, Dan and Danielle Perper. Doc. 43. Earlier in the suit, the court dismissed Great Northern's negligent failure to warn claim against Amazon. Docs. 31-32 (reported at 2019 WL 3935038 (N.D. Ill. Aug. 20, 2019)). With discovery complete, Amazon moves for summary judgment on the remaining claims against it. Doc. 85. The motion is granted.

### Background

The court recites the facts as favorably to Great Northern as the record and Local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 633 (7th Cir. 2019).

1

### A. Amazon.com and Third-Party Sellers

Amazon operates an online marketplace at www.amazon.com. Doc. 91 at ¶ 10. In addition to offering Amazon's own products for sale, the website provides a forum for millions of other parties—which the court will call "third-party sellers"—to sell their own products. *Id*. at ¶¶ 10-11. Great Northern objects to the term "third-party sellers," preferring instead "applicants." *E.g.*, *id*. at ¶¶ 7-8, 10, 12, 17, 19. Because the distinction is semantic and Great Northern itself uses the term "third-party sellers" in its Local Rule 56.1(b)(3)(C) statement, Doc. 92 at ¶¶ 3, 9-11, the court will do the same.

#### 1. Business Solutions Agreement

To gain access to Amazon's online marketplace, a third-party seller must enter into the Amazon Services Business Solutions Agreement ("BSA"). Doc. 91 at ¶¶ 10, 15. Amazon can amend the BSA at its sole discretion. Doc. 94 at ¶ 22. The BSA requires third-party sellers to "source," "offer," and "sell"—and in some instances "fulfill"—the products they list for sale. Doc. 91 at ¶ 16 (quoting Doc. 92-2 at 47, § S-2.1). Those provisions give rise to three categories of rights and obligations.

First, third-party sellers are responsible for sourcing their products from manufacturers or upstream distributors and communicating their offers on a detail page for each product. *Id*. at ¶¶ 17-18, 21. A third-party seller's identity is twice communicated to customers—first, in the "sold by" line on the product detail page, and second, on the order confirmation page before the customer clicks the "place your order" button. *Id*. at ¶ 30. When communicating an offer, a third-party seller must provide "accurate and complete Required Product Information," including a product description and pricing information. *Id*. at ¶ 17 (quoting Doc. 92-2 at 46, § S-1.1). A third-party seller sets the prices of its products and may offer warranties of its choosing. *Id*. at ¶¶ 23, 25. At all relevant times, the BSA required each third-party seller to ensure—via its

"price parity" provision—that the price and offer terms for products offered by the seller on amazon.com were "at least as favorable to Amazon Site users as the most favorable offer terms upon which a product is offered or sold via [the seller's other] Sales Channels." Doc. 92-2 at 49, § S-4; Doc. 94 at ¶ 28. The BSA confers on Amazon the authority to remove, in its sole discretion, any content uploaded by third-party sellers. Doc. 94 at ¶ 23.

Second, the BSA outlines the respective roles of Amazon and third-party sellers as to payment, product packaging, and delivery. Amazon is responsible for processing payment, and remits to the third-party seller the funds collected from the customer on its behalf, less fees agreed to in the BSA. *Id*. at ¶ 3. A third-party seller must properly package its products, ensure that they comply with applicable law, and—in the case of "Seller-Fulfilled" products—ship them directly to the buyer. Doc. 92-2 at 47, § S-2.1; Doc. 91 at ¶¶ 9, 24. When fulfilling an order, a third-party seller must "identify [itself] as the seller of each of [its] Products on all packing slips or other information included or provided in connection with [its] Products and as the Person to which a customer may return the applicable product." Doc. 92-2 at 47-48, § S-2.1. And the third-party seller is "responsible for any non-conformity or defect in, or any public or private recall of, any of [its] Products." *Id*. at 56, § W-3.5.

Third, the BSA describes the respective responsibilities of Amazon and third-party sellers in the event of a customer dispute. If a customer has a problem with a product, she may contact the third-party seller directly using a messaging system provided by Amazon or, alternatively, contact Amazon's customer service department. Doc. 94 at ¶ 30; Doc. 92-2 at 14 (48:13-15). Amazon retains "broad ability" to investigate returns, credit card chargebacks, customer claims, and other types of disputes. Doc. 94 at ¶ 15. While such an investigation is under way, Amazon may withhold from the third-party seller remittance of payment for the product in question. *Id*.

3

at ¶ 14.  Moreover, the BSA incorporates Amazon's "A-to-Z" guarantee, under which Amazon guarantees the timely delivery and quality of products sold by third-party sellers.  *Id*. at ¶ 26; Doc. 92-2 at 48-49, § S-3.2.  Pursuant to the guarantee, a buyer can bring a complaint to the third-party seller, and if the seller does not respond to the customer's reasonable satisfaction, Amazon will refund the customer's purchase.  *Ibid*.  Absent circumstances such as credit card fraud, for which Amazon assumes responsibility, the third-party seller is required to reimburse Amazon for such refunds.  Doc. 92-2 at 48-49, § S-3.2.

    **2.**  **Conditions of Use**

Purchasers of products on the website are subject to Amazon's Conditions of Use.  Doc. 91 at ¶¶ 13-14.  A section titled "Other Businesses" states, in relevant part: "Parties other than Amazon operate stores, provide services, or sell product lines through the Amazon Services. … We are not responsible for examining or evaluating, and we do not warrant the offerings of, any of these businesses or individuals or the content of their Web sites.  Amazon does not assume any responsibility or liability for the actions, product, and content of all these and any other third parties."  *Id*. at ¶¶ 13-14 (quoting Doc. 88-8 at 6).

  **B.**  **The Hoverboards**

Danielle Perper and Marcie Kleinman each ordered a hoverboard on Amazon's website in November 2015 as a holiday gift for the Perpers' children.  *Id*. at ¶¶ 7-8.  Perper purchased a hoverboard from Paradise, and Kleinman purchased one from Shenzhen, each a third-party seller based in China.  *Id*. at ¶¶ 3-4.  In connection with their purchases, Perper and Kleinman received order receipts with product descriptions authored by Paradise and Shenzhen, respectively.  *Id*. at ¶¶ 36-37.  Perper's order receipt stated that her hoverboard was "sold by" Paradise and referred to the product as a "Fortech Smart Scooter Two Wheels Self Balance Electronic with Samsung Battery (Blue)."  *Id*. at ¶ 36 (quoting Doc. 88-7 at 2).  Kleinman's order receipt stated that her

hoverboard was "sold by" Shenzhen. Doc. 88-6 at 2. Kleinman decided to buy the product—described as a "Smart Unicycle 2 Wheel Self Balancing Electric Scooter Balance Hover Board Colour Black," *ibid*.—because she "fe[lt] safer purchasing from Amazon" than from the "random websites" she came upon while searching on Google for hoverboards, Doc. 92-3 at 4 (12:11-18); Doc. 94 at ¶ 31.

Shenzhen and Paradise "fulfilled" the orders, meaning they shipped the hoverboards directly to Kleinman and Perper. Doc. 91 at ¶ 9. In February 2016, the Perpers' children were playing on one of the hoverboards at their home in suburban Chicago. Doc. 43 at ¶¶ 11, 15; Doc. 90 at 1-2. That evening, a fire broke out in the area of the home where both hoverboards were being stored, causing significant damage. Doc. 43 at ¶¶ 11, 16-17, 19. Great Northern alleges that the fire was caused by a defective lithium-ion battery pack in one or both of the hoverboards. *Id*. at ¶¶ 21, 23-27.

## Discussion

Great Northern's remaining claims against Amazon sound in product liability, negligent misrepresentation, and statutory consumer fraud. *Id*. at ¶¶ 28-48.

### I. Product Liability Claim

For its product liability claim, Great Northern alleges that Amazon sold, distributed, and/or played an integral role in the marketing and distribution of the two hoverboards, at least one of which had a defective lithium-ion battery pack, and that it failed to warn about the defect(s). *Id*. at ¶¶ 28-37. Great Northern does not defend the failure-to-warn component of its claim, thereby abandoning it. *See Gates*, 916 F.3d at 641 ("The district court was not required to address a claim or theory that plaintiff did not assert [in opposition to summary judgment].").

As for the defective design component of the claim, Illinois has adopted § 402A of the Restatement (Second) of Torts, which subjects manufacturers and "sellers" of a product to strict

liability for product defects. *See Crowe v. Pub. Bldg. Comm'n of Chi.*, 383 N.E.2d 951, 952-53 (Ill. 1978); *see also Apperson v. E.I. du Pont de Nemours & Co.*, 41 F.3d 1103, 1106 (7th Cir. 1994). Although § 402A does not define the term "seller," Illinois law construes it to encompass "all persons in the distributive chain" of a defective product, "including suppliers, distributors, wholesalers, and retailers." *Hammond v. N. Am. Asbestos Corp.*, 454 N.E.2d 210, 216 (Ill. 1983); *see also Winters v. Fru-Con, Inc.*, 498 F.3d 734, 745 (7th Cir. 2007). Illinois law also subjects to strict product liability entities that—while not links in the distribution chain, and thus not "sellers" under § 402A—have an "integral involvement in the overall producing and marketing enterprise that placed the dangerous product in the stream of commerce, and … participat[e] in the profits from the distribution of the product." *Hebel v. Sherman Equip.*, 442 N.E.2d 199, 204 (Ill. 1982); *see also Connelly v. Uniroyal, Inc.*, 389 N.E.2d 155, 163 (Ill. 1979).

The Supreme Court of Illinois has not addressed whether a defendant is subject to strict product liability where, as here, it operates a website on which others describe, offer, and sell their own products. Nor has the Appellate Court of Illinois. Absent such guidance, this court must predict how the Supreme Court of Illinois would resolve the issue. *See Cmty. Bank of Trenton v. Schnuck Mkts.*, 887 F.3d 803, 811 (7th Cir. 2018). In so doing, this court must bear in mind the Seventh Circuit's admonition that, "[w]hen given a choice between an interpretation of Illinois law which reasonably restricts liability, and one which greatly expands liability, [a federal court] should choose the narrower and more reasonable path (at least until the Illinois Supreme Court [says] differently)." *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc); *see also Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 636 n.5 (7th Cir. 2007) (holding that this principle applies "even where the plaintiff had no choice but to litigate [its] claim in federal court"); *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000) (same,

6

adding: "Federal courts are loathe to fiddle around with state law. Though district courts may try to determine how the state courts would rule on an unclear area of state law, district courts are encouraged to dismiss actions based on novel state law claims."); *Home Valu, Inc. v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960, 965 (7th Cir. 2000) ("Where … we are faced with two equally plausible interpretations of state law, we generally choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability.") (internal quotations marks omitted).

As for whether it qualifies as a "seller" under § 402A, Amazon contends that it was never in the distribution chain of the hoverboards because it never exerted "control" over them, for—as the Conditions of Use make clear—it never sourced, owned, possessed, or offered them for sale. Doc. 87 at 11, 15-17. While granting that Amazon never exercised *physical* control over the hoverboards, Great Northern submits that the BSA granted Amazon "overall control" over a third-party seller's "interaction with a customer"—and thus overall control over the two hoverboard sales. Doc. 90 at 4-5. In so arguing, Great Northern stresses that the extensive rights granted Amazon by the BSA—including the ability to remove the content uploaded by third-party sellers, to withhold remittance payments while investigating customer complaints, and to issue refunds under the A-to-Z Guarantee—sufficiently entangle Amazon with the business of "selling" as to bring it within the chain of distribution.

This dispute turns on the form of control necessary to be a § 402A "seller" under Illinois law. Amazon has the better of the argument, for the Supreme Court of Illinois has consistently conveyed that the key criterion for being a seller is exercising control over the *product*, not over the *purchasing process*. See *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 345 (Ill. 2008) (holding that a product defect must have "existed at the time the product left the defendant's

7

control" for strict liability to apply); *Hammond*, 454 N.E.2d at 216-17 (rejecting the defendant's argument that it "never had control over" the allegedly defective product and thus was not the product's "seller" under § 402A, given evidence that the defendant had agreed not only to "sell," but also to "deliver," the product); *Crowe*, 383 N.E.2d at 953 ("[I]f the defect existed at the time a product left a particular seller's control, that seller is subject to strict liability for injury resulting from the defect."); *see also Bilski v. Scientific Atlanta*, 964 F.2d 697, 699 (7th Cir. 1992) (recognizing that, to prevail in a strict product liability suit under Illinois law, "a plaintiff must establish … [that] 'the [defective] condition existed when [the product] left the seller's control'") (quoting *Pierce v. Hobart Corp.*, 512 N.E.2d 14, 16 (Ill. App. 1987)). In *Crowe*, for example, the court held that a former lessor of a defective scaffold could be held liable as the scaffold's "seller," reasoning that the position of a lessor (and an ex-lessor) is "no different from that of a seller" in that each is "within the original chain of distribution and reaps a profit by placing a product in the stream of commerce." 383 N.E.2d at 953. Critically, *Crowe* added that, "[a]t the point in the chain of distribution where the product *passes through the hands* of the lessor, he becomes as capable as a seller to prevent a defective product from proceeding through the steam of commerce." *Ibid.* (emphasis added).

  The rationale articulated in *Crowe* and the other cited cases for deeming certain actors to be "sellers" under § 402A does not fit where, as here, the defendant never takes possession of the allegedly defective product. This court therefore cannot predict that the Supreme Court of Illinois would hold on the present facts that Amazon is a § 402A "seller" of a third-party seller's product. *See Garber v. Amazon.com, Inc.*, 380 F. Supp. 3d 766, 775-78 (N.D. Ill. 2019) (reaching the same bottom-line conclusion). This is particularly so given the lack of cases from that court, or even from the Appellate Court of Illinois, extending § 402A liability to

8

circumstances like these, and the Seventh Circuit's admonition that, absent such guidance, a federal court should not expand liability under state law. *See Todd*, 21 F.3d at 1412.

That leaves the question whether Amazon is the kind of actor that, while outside the chain of distribution and thus not a § 402A "seller," can nonetheless be subject to strict product liability. In *Hebel*, the Supreme Court of Illinois explained that extending strict liability to such actors—those that have an "integral involvement in the overall producing and marketing enterprise that placed the dangerous product in the stream of commerce, and … participat[e] in the profits from the distribution of the product"—is justified because "the loss caused by unsafe products should be borne by those [1] who create the risk of harm by participating in the manufacture, marketing and distribution of unsafe products; [2] who derive economic benefit from placing them in the stream of commerce; and [3] who are in a position to eliminate the unsafe character of the product and prevent the loss." 442 N.E.2d at 204-05.

Specifically addressing each of those three characteristics, Amazon argues that it is not among the category of actors subject to strict liability despite being outside the chain of distribution. Doc. 87 at 20-21. In its summary judgment opposition brief, Great Northern does not even begin to engage with the *Hebel* analysis, either to argue that the analysis does not apply here or explain that it favors subjecting Amazon to strict liability. Doc. 90 at 3-8. Instead, relying on *Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431 (2020), Great Northern submits that Amazon should be held strictly liable because Shenzhen and Paradise, its co-defendants, can be served only in China, making Amazon the only entity "reasonably available to an injured plaintiff." Doc. 90 at 6-8.

By focusing on a California intermediate appellate court case and failing to engage in the *Hebel* analysis, Great Northern forfeited any argument it might have had that Amazon is among

the actors outside the chain of distribution that may nonetheless be subject to strict liability under Illinois law. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("[A]s the district court found, the musical diversity argument was forfeited because it was perfunctory and undeveloped."). In any event, even if Great Northern had engaged with *Hebel* and offered a reading of Illinois law "equally plausible" to the reading offered by Amazon, this court still would have been obliged to rule in Amazon's favor due to the Seventh Circuit's admonition against expanding state tort liability beyond the bounds established by state courts. *Home Valu, Inc.*, 213 F.3d at 963.

In sum, Amazon is entitled to summary judgment on the product liability claim.

## II. Negligent Misrepresentation Claim

To establish a negligent misrepresentation claim under Illinois law, the plaintiff must show: "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833-34 (7th Cir. 2007) (citing *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334-35 (Ill. 2006)). Although the complaint alleges several misrepresentations, Doc. 43 at ¶¶ 39-40, Great Northern's summary judgment opposition brief predicates its negligent misrepresentation claim exclusively on the assertion that "the hoverboard sold by Paradise 00 [and purchased by Danielle Perper] was advertised as containing Samsung

10

batteries," when in fact the batteries were counterfeit. Doc. 90 at 8-9. Amazon is entitled to summary judgment on that claim for three independent reasons.

First, a reasonable jury could not find that Amazon made the allegedly false statement, *i.e.*, that the Paradise hoverboard contained Samsung batteries. Great Northern admits that the product description for the hoverboard—"Fortech Smart Scooter Two Wheels Self Balance Electronic with Samsung Battery (Blue)"—was written by Paradise and provided by Paradise to Amazon. Doc. 91 at ¶ 36 (quoting Doc. 88-7 at 2). Great Northern nevertheless contends that Amazon bears responsibility for the statement because it "sanctioned the misrepresentation by allowing it to be posted on Amazon.com." Doc. 90 at 8. That is, Great Northern faults Amazon for not "blocking the content" until it could verify the statement's accuracy. *Ibid*. Great Northern offers no decisional or other authority to support the proposition that Illinois law deems a website operator to have made a statement uploaded by a user simply because the operator did not block the user's content. *Cf. Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 400 (S.D.N.Y. 2018) (New York law) (holding that Amazon could not be held liable on a similar misrepresentation claim, reasoning that Amazon "did not make any statement about the [defective] coffeemaker").

Second, and relatedly, Great Northern's negligent misrepresentation claim is barred by § 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c). The CDA states, in relevant part, that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *Id*. § 230(c)(1). As the Seventh Circuit has explained, the CDA "limits who may be called the publisher of information that appears online." *City of Chicago v. StubHub!, Inc.*, 624 F.3d 363, 366 (7th Cir. 2010). And in *Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v.*

11

*Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008), the Seventh Circuit held that the CDA barred a claim alleging that craigslist, an online messaging board, was liable for discriminatory housing advertisements that its users posted on its website. *See id*. at 669-71. Likewise here: Because Amazon "is not the author" of the Paradise hoverboard description, it cannot "be treated as the 'speaker' of [that content]" for purposes of the negligent misrepresentation claim. *Id*. at 671; *see also Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred [by the CDA].").

Third, Great Northern fails to adduce evidence that Perper, when purchasing the Paradise hoverboard, relied on the false assertion that the product came with Samsung batteries. Absent such reliance, Great Northern has no viable negligent misrepresentation claim. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1208 (7th Cir. 1998) (holding that the district court properly rejected a negligent misrepresentation claim where there was no evidence of reasonable reliance on the alleged misrepresentation).

In sum, Amazon is entitled to summary judgment on the negligent misrepresentation claim.

### III. ICFA Claim

For its claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*., Great Northern alleges that Amazon engaged in unfair and deceptive trade practices in the advertising and sale of defective hoverboards. Doc. 43 at ¶¶ 41-48. The elements of an ICFA claim are: "(1) a deceptive [or unfair] act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the [deceptive or unfair practice]; (3) the deceptive [or unfair] act[s] occurred during a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive [or

12

unfair] act[s]." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014); *see also Siegel v. Shell Oil Co.*, 612 F.3d 932, 934-35 (7th Cir. 2010). The ICFA prohibits both "unfair" and "deceptive" acts or practices. 815 ILCS 505/2; *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). Although the complaint alleges both, Doc. 43 at ¶¶ 42-45, Great Northern's summary judgment opposition brief defends only the deceptive practices aspect of its claim, Doc. 90 at 8-9.

The deceptive act underlying the ICFA claim is the same as the act underlying the negligent misrepresentation claim—Amazon's "allowing the posting" of inaccurate information about the batteries in the Paradise hoverboard purchased by Perper. *Ibid.* The ICFA claim therefore fails for much the same reasons as the negligent misrepresentation claim, as Amazon did not make the deceptive statement, the CDA shields Amazon from liability, and that statement did not proximately cause Perper's purchase. *See O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 719 (N.D. Ill. 2020) ("Without a plausible link tying any particular statement by Defendant to Plaintiff's purchase of the [v]ehicle, Plaintiff also fails to allege proximate causation, as required to state a claim for violation of the ICFA.").

**Conclusion**

Amazon's summary judgment motion is granted. This case may proceed, if at all, against Paradise and Shenzhen only.

March 9, 2021

_____
United States District Judge